UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

    CASE No. 1:08-cr-120

    HON. ROBERT J. JONKER

ALBERT PETER HUGHES,

    Defendant.

_____/

# OPINION REGARDING DEFENDANT HUGHES'S FIRST STEP ACT MOTION

## INTRODUCTION

Defendant Hughes pleaded guilty to a Section 841(b)(1)(A) crack cocaine offense; a Section 841(b)(1)(C) powder cocaine offense; a Section 922(g) firearm offense; and a Section 924(c) firearm offense in July 2008. The crack cocaine offense exposed Defendant to a mandatory minimum sentence of ten years in prison and a maximum of life. He was sentenced in May 2009 to a total term of 181 months imprisonment. He was twenty-seven years old at the time.

The matter before the Court is Defendant Hughes's motion for modification or reduction in sentence under the newly enacted First Step Act, which provides for the retroactive application of certain sentencing reforms contained in the 2010 Fair Sentencing Act. (ECF No. 82). The Court appointed counsel to assist Defendant Hughes with his First Step motion. Both sides have filed briefs asserting that Defendant Hughes is eligible for a reduced sentence.

The Court agrees and finds that Hughes is eligible for relief under the First Step Act. The Court discerns no need for a hearing on the fully briefed issues. The Court can and does exercise

its discretion under the First Step Act to reduce Defendant Hughes's sentence as provided in this Opinion and corresponding Order.

## FACTUAL AND PROCEDURAL BACKGROUND

The Sixth Circuit Court of Appeals has previously summarized the events leading to Defendant's criminal conviction:

> On March 25, 2008, a 911 call reporting an assault of a female by her boyfriend led police officers to respond to defendant's apartment in Grand Rapids, Michigan. Defendant answered the door, said he was alone, and allegedly permitted the officers to enter to determine whether anyone inside was injured. Despite defendant's attempt to hide it, the officers saw marijuana and crack cocaine in plain view in the living room. A protective sweep of the area where defendant was asked to sit revealed a loaded Cobray 9mm rifle and a loaded Femaru 9mm semiautomatic pistol between the cushions of the loveseat and couch. The premises were secured while a search warrant was obtained, and the subsequent search resulted in the discovery of 64 grams of crack cocaine and 116 grams of powder cocaine.
>
> A four-count Indictment filed on May 6, 2008, charged defendant with possessing with intent to distribute more than 50 grams of cocaine base, possessing with intent to distribute powder cocaine, being a felon in possession of a firearm, and possessing a firearm in furtherance of a drug trafficking offense. Unwilling to cooperate as required by the government's proposed plea agreement, but wanting to avoid an enhancement of the mandatory minimum sentence from 10 years to 20 years that would result from the anticipated filing of a supplemental information, defendant pleaded guilty as charged following extensive questioning by the district court during the July 21, 2008 change-of-plea hearing.

*United States v. Hughes*, 392 F. App'x 382, 383 (6th Cir. 2010).

The Final Presentence Report (PSR) prepared by the probation officer found that Defendant Hughes was responsible for 64.19 grams of crack cocaine and 123.16 grams of powder cocaine. At the time, this was equivalent to 24.62 kilograms of marijuana. (PSR ¶ 16). He was further found responsible for the Cobray 9mm rifle and the Femaru 9mm semiautomatic pistol.

(*Id.*)  The Sentencing Guidelines commentary was then used to calculate Defendant's initial base offense level of 30.  (PSR ¶ 30; *see* U.S.S.G. § 2D1.1. cmts. 10(B) and 10(D)(i)).  That level subsequently became Defendant's total offense level for purposes of determining the guidelines for the first three counts.  (PSR ¶ 42).  The officer then scored four criminal history points, corresponding to a criminal history category of III.  On the chart, Defendant's guideline range was 121-151 months on the first three counts.  Defendant's conviction for Count 4 then required the minimum term of imprisonment required by statute, or five years consecutive with the other terms.  U.S.S.G. § 2K2.4(b).

At the April 30, 2009 sentencing, the Court overruled the defense objection to the probation officer's decision not to reduce Defendant's level of offense to account for his acceptance of responsibility, and imposed a sentence of 181 months imprisonment, consisting of concurrent terms of 121 months on Count 1, 121 months on Count 2, and 120 months on Count 3.[1]  The Court imposed a consecutive sentence of 60 months with respect to Count 4 resulting in a total term of imprisonment of 181 months.  (ECF No. 49).  An initial remand by the Sixth Circuit resulted in the same sentence on January 28, 2011.[2]  (ECF No. 71, 72).  The resentencing, however, raised a novel issue: whether the sentencing reforms provided in the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372, which was enacted after his original sentence should apply to the resentencing.  The Court concluded it did not apply, and in a published decision the Sixth Circuit affirmed the Court's decision.  *United States v. Hughes*, 733 F.3d 642 (6th Cir. 2013).  Since then

---

[1] The sentence for Count 3 was required by statute, 18 U.S.C. § 924(a)(2), which mandates a sentence of not more than 10 years imprisonment for a violation of the count of conviction.

[2] On August 20, 2010, the Sixth Circuit remanded Defendant's case for resentencing in light of *United States v. Almany*, 598 F.3d 238 (6th Cir. 2010).  Before resentencing could take place, however, the Supreme Court issued its decision in *Abbott v. United States*, 562 U.S. 8 (2010), which the Sixth Circuit later described as "extinguish[ing]" the "whole basis for the remand." *United States v. Hughes*, 733 F.3d 642, 643 (6th Cir. 2013).

Defendant Hughes has unsuccessfully pursued collateral relief in a Section 2255 action. *Hughes v. United States*, No. 1:16-cv-804 (W.D. Mich. Jan. 3, 2018), *aff'd* No. 18-1029 (6th Cir. June 14, 2018).

On December 31, 2018, Defendant Hughes returned to his criminal case seeking relief under the First Step Act. (ECF No. 82). The Court appointed counsel to assist Defendant Hughes on April 4, 2019 (ECF No. 89). The government and Defendant have both filed briefs and supplemental briefs.

## THE FAIR SENTENCING ACT OF 2010

In the summer of 2010 Congress passed the Fair Sentencing Act of 2010, Pub L. No. 111-220, 124 Stat. 2372 (2010). The Fair Sentencing Act reduced the sentencing disparity between crack and powder cocaine offenses by increasing the amount of crack cocaine needed to trigger the mandatory minimums established in the Anti-Drug Abuse Act of 1986. *United States v. Blewett*, 746 F.3d 647, 649 (6th Cir. 2013) (en banc); *see also Dorsey v. United States*, 567 U.S. 260, 263-64 (2012). More specifically, the Fair Sentencing Act increased the threshold quantity in 21 U.S.C. § 851(b)(1)(A)(iii) from 50 grams or more of crack cocaine to 280 grams or more. Fair Sentencing Act at § 2(a)(1). The Fair Sentencing Act also increased the threshold quantity in 21 U.S.C. § 841(b)(1)(B)(iii) from 5 grams or more of crack cocaine to 28 grams or more. Fair Sentencing Act at § 2(a)(2). Today, therefore, in order to trigger the ten years to life sentencing range of Section 841(b)(1)(A)(iii) that Defendant Hughes was convicted under with respect to Count 1, the offense must involve more than 280 grams of crack cocaine.

Those changes made by the Fair Sentencing Act, however, were not retroactive. *Blewett*, 746 F.3d at 650.³ Because Defendant Hughes had been convicted and sentenced before the Fair Sentencing Act's enactment he was not, at that time, eligible for any relief.

## THE FIRST STEP ACT OF 2018

On December 21, 2018, President Trump signed the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (the "First Step Act") into law. The First Step Act "modified prior sentencing law and expanded vocational training, early-release programs, and other programming designed to reduce recidivism." *United States v. Simons*, 375 F. Supp. 3d 379, 385 (E.D.N.Y. 2019). In Section 404 of the First Step Act, Congress made the Fair Sentencing Act's statutory changes for crack cocaine offenses retroactive to defendants who were sentenced before August 3, 2010:

> SEC. 404. APPLICATION OF FAIR SENTENCING ACT.
>
> (a) DEFINITION OF COVERED OFFENSE.—In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010.
>
> (b) DEFENDANTS PREVIOUSLY SENTENCED.—A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) were in effect at the time the covered offense was committed.
>
> (c) LIMITATIONS.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously

---

³ In *Dorsey v. United States*, 567 U.S. 260 (2012), the Supreme Court determined that the Fair Sentencing Act applied to any defendant sentenced on or after August 3, 2010, regardless of when the offense occurred. Because Defendant Hughes was sentenced before August 3, 2010, *Dorsey* did not provide him with a pathway to any relief.

5

> imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

First Step Act of 2018, Pub. L. No. 115-319, § 404, 132 Stat 5194 (2018).

Accordingly, defendants who were convicted before August 3, 2010 of a crack cocaine offense for which the Fair Sentencing Act reduced their statutory penalties are now eligible for consideration of a reduced sentence. First Step Act of 2018, Pub. L. No. 115-319, § 404(a), (b), 132 Stat. 5194 (2018). Whether to reduce the sentence of an eligible defendant is left to the sentencing court's discretion. *Id.* at § 404(c). No reduction is required.

## DISCUSSION

### 1. Summary of the Court's Process

In an earlier Order, this Court set out a two-step process for evaluating First Step Act motions. *See United States v. Boulding*, 379 F. Supp. 3d 646 (W.D. Mich. May 16, 2019). The first step is determining eligibility. In *Boulding* the Court concluded that "eligibility under the language of the First Step Act turns on a simple, categorical question: namely, whether a defendant's offense of conviction was a crack cocaine offense affected by the Fair Sentencing Act." *Id.* at 651. As applied to that case, this determination meant that the quantity of narcotics (whether admitted, found by a jury, or found by a court) did not factor into the question of eligibility. That is true here as well.

At the second step, a reviewing court evaluates the motion to determine whether it should exercise its discretion to reduce a defendant's sentence. This calls for a determination of the scope of the relief available. Here the Court previously determined, and reaffirms here, that the First

Step Act does not provide for a plenary-resentencing. *Id.* at \*5; *see also United States v. Davis*, No. 07-CR-245S (1), 2019 WL 1054554, at \*2 (W.D.N.Y. Mar. 6, 2019) (concluding the First Step Act does not provide for a plenary resentencing and that the defendant need not be present for a reduction in sentence); *United States v. Jones*, No. 2:05-CR-29-FL-1, 2019 WL 2480113, at \*2 (E.D.N.C. June 11, 2019) (noting that under 18 U.S.C. § 3582(c) a court may not modify a term of imprisonment except for a narrow range of situations, including "to the extent otherwise expressly permitted by statute," 18 U.S.C. § 3582(c)(1)(B) and holding that "[t]he First Step Act permits the court to impose a 'reduced sentence' and 'modify' the term of imprisonment under § 3582(c)(1)(B), but it does not 'expressly permit' full resentencing."). But as the Court has also remarked, "unlike earlier rounds of retroactive crack or other drug sentencing relief, the First Step Act does not impose any artificial or guideline limits on a reviewing court. These earlier rounds of retroactive reduction proceeded under 18 U.S.C. § 3582(c)(2) based on Sentencing Commission guideline reductions and were therefore subject to the limitations built into that section. The First Step Act is different. The Sentencing Commission has nothing to do with it." *Boulding*, 379 F. Supp. 3d at 653.

At this point the Court considers whether to reduce a sentence by looking at the factors set out in Section 3553(a), the revised statutory range under the Fair Sentencing Act, any amendments to the guideline range, and post-sentencing conduct. *Jones*, 2019 WL 248-113, at \*2.

**2. Defendant Hughes is Eligible for a Reduced Sentence.**

At the first step, the Court concludes Defendant Hughes is eligible for consideration of a reduced sentence under the First Step Act. Indeed, the parties do not argue otherwise.[4] Defendant

---

[4] The government's view of eligibility turns on quantity. Here, because Defendant Hughes is responsible for approximately 64.19 grams of crack cocaine, a quantity that is insufficient to trigger the original penalty provisions applicable to him, the government concedes that Defendant

7

Hughes's offense was committed before the Fair Sentencing Act's enactment on August 3, 2010; he was further convicted under the enhanced penalties found in Sections 841(b)(1)(A)(iii); and those penalties were "modified by section 2 . . . of the Fair Sentencing Act of 2010[.]" He was, accordingly, convicted of a "covered offense." The categorical limitations in Section 404(c) also do not apply to Defendant Hughes. His sentence was not "previously imposed or previously reduced in accordance" with the Fair Sentencing Act's amendments. And he has not previously moved to reduce his sentence under Section 404 of the First Step Act. Accordingly, the Court concludes that Defendant is eligible under Section 404(a) for a reduced sentence under Section 404(b).

3. **Scope of Relief**

   *a. Guideline Comparison*

At the second step the Court considers the scope of relief available to Defendant and then proceeds to determine by how much, if any, it should reduce Defendant Hughes's sentence. The Court begins with a guideline range comparison.

   i.  *Original Guidelines*

As originally set out in 2009, Defendant Hughes's sentence on the first three counts was calculated as follows using the November 2008 edition of the Guidelines Manual:[5]

---

is eligible for a reduced sentence. As stated above, the Court does not adopt this construction. The Court previously acknowledged that *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne v. United States*, 570 U.S. 99 (2013), have not been applied retroactively, but it noted that the cases still carry weight in making the "as if" sentencing decision a reviewing court makes under the First Step Act. *See United States v. Boulding*, 379 F. Supp. 3d at 656 & 656 n.6. The Court need not delve deeper into this argument for purposes of this motion, however, because all agree the quantity of narcotics attributable to Defendant, from whatever source, is insufficient to trigger the statutory penalty range applicable under Section 841(b)(1)(A).

[5] While the Fair Sentencing Act made no changes to Section 841(b)(1)(C) with respect to Defendant's conviction in Count 2 for the powder cocaine offense, and no changes to Count 3 for Defendant's Felon in Possession conviction under Section 922(g)(1), these convictions were, and

The PSR began with Counts 1 and 2:

| | | |
|---|---|---|
| Base Offense Level (PSR ¶ 25): | 30 | (based on 1,308.42 kilograms of marijuana equivalent. *See* § 2D1.1(c)(4); § 2D1.1 n.10(B); § 2D1.1 n.10(D)(i) (2008)) |
| **Adjusted Offense Level (PSR ¶ 30):** | **30** | |

The PSR then calculated the Base Offense Level for Count 3:

| | | |
|---|---|---|
| Base Offense Level (PSR ¶ 31): | 20 | (*See* § 2K2.1(a)(4)(A) (2008)) |
| Specific Offense Characteristic (PSR ¶ 32): | +2 | (*See* § 2K2.1(b)(4)(A) (2008)) |
| Specific Offense Characteristic (PSR ¶ 33) | +4 | (*See* § 2K2.1(b)(6) (2008)) |
| Cross Reference (PSR ¶ 34): | 30 | (*See* 2K2.1(c)(1)(A) (2008))[6] |
| **Adjusted Offense Level (PSR ¶ 38):** | **30** | |

When computing the offense level computation, Counts 1 (crack) and 2 (powder) were grouped together under U.S.S.G. § 3D1.2(d), and then Count 3 (felon in possession) was grouped with Counts 1 and 2 under Section 3D1.2(c). (PSR ¶¶ 20-21). Section 3D1.3(a) then called for an offense level that was the offense level for the most serious of the three counts, though all three counts resulted in the same adjusted offense level. (PSR ¶ 22). Defendant's total offense level on

---

still are, grouped together under the guidelines. Several courts to have reviewed similar issues have concluded that a Defendant's sentences on the other counts are tied to the crack cocaine conviction. *See, e.g., United States v. Black*, 388 F. Supp. 3d 682, 688 (E.D. Va. 2019) (finding a defendant eligible for a reduced sentence on both a crack cocaine offense and a firearm offense grouped with the crack cocaine offense). Neither side argues that Defendant is entitled to any relief on his sixty-month consecutive sentence he is serving with respect to Count 4.

[6] The cross reference in Section 2K2.1(c)(1)(A) directed the Court to apply Section 2X1.1 if the resulting offense level was greater than what was determined above. Under Section 2X1.1 the base offense level for any substantive offense is to be applied. In this case, the substantive offense was the Count 1 violation, and under Section 2D1.1(c)(5) the level was 30 for at least 50 grams but less than 150 gram of cocaine base. Defendant was responsible for 64.19 grams of crack cocaine. Because level 30 is higher than 26, the cross reference applied. In any event, the level of offense for the highest scoring offense in the group would control under the grouping rules.

the first three counts therefore was level 30. (PSR ¶ 42). Defendant Hughes' guideline range for the Count 4 conviction was the minimum required by statute, or five years, under Section 2K2.4(b).

    ii.    *2018 Guidelines*

Under the current version of the sentencing guidelines, Defendant's Sentence is calculated as follows:

Counts 1 and 2:

| | | |
|---|---|---|
| Base Offense Level | 24 | (based on 253.8 kilograms of converted drug weight. *See* § 2D1.1(c)(8) (2018)) |
| **Adjusted Offense Level** | **24** | |

Count 3

| | | |
|---|---|---|
| Base Offense Level: | 20 | (*See* § 2K2.1(a)(4)(A) (2018)) |
| Specific Offense Characteristic | +2 | (*See* § 2K2.1(b)(4)(A) (2018)) |
| Specific Offense Characteristic | +4 | (*See* § 2K2.1(b)(6) (2018)) |
| Cross Reference | NA | (*See* 2K2.1(c)(1)(A) (2018))[7] |
| **Adjusted Offense Level:** | **26** | |

**Total Offense Level**[8]    **26**

---

[7] The cross reference in Section 2K2.1(c)(1)(A) directs the Court to apply Section 2X1.1 if the resulting offense level is greater than what was determined above. Under Section 2X1.1 the base offense level for any substantive offense is to be applied. In this case, the substantive offense was the Count 1 violation, and under Section 2D1.1(c)(8) the level was 24 for at least 28 grams but less than 112 grams of cocaine base. Defendant was responsible for 64.19 grams of crack cocaine. Because level 26 is higher than 24, the cross reference does not apply.

[8] As the government points out in the supplemental response brief (ECF No. 91), Counts 1-3 are grouped under Section 3D1.2(d). Section 3D1.3(b) provides that the offense guideline that produces the highest offense level is to be applied. That means, now, that the offense level for Count 3 (felon in possession) applies for Counts 1-3. Sections 3D1.4(a), 3D1.5.

The parties agree that the guideline range for Counts 1 through 3 is now 78-97 months. Count 1, furthermore, now carries a minimum 5-year sentence and maximum 40 year sentence; Count 2, still calls for a maximum 20 years in prison under Section 841(b)(1)(C), and Count 3 still calls for a 10-year maximum under Section 924(a)(2).

### b. *Discretionary Decision in this Case*

The Court has considered the positions of both parties on the revised guideline issue. The Court has also reviewed the original PSR, and the rest of the record. The Court elects to exercise its discretion to reduce Defendant Hughes's sentence under the First Step Act. In evaluating the extent of the reduction, the Court considers the guideline analysis of each side, as well as the factors set forth in § 3553(a). This Court originally found a basis in these factors for a sentence at the bottom end of Defendant's guideline range.

The guideline analysis augers in favor of some reduction, as do the recent remarks contained in a Summary Reentry Plan, attached to Defendant's supplemental brief, reporting a positive adjustment and rapport with staff. (ECF No. 94-1, PageID.482). Other considerations, including the seriousness of the underlying offense—particularly, here, Defendant's possession of dangerous weapons—as well as some recent disciplinary infractions counsels caution. Considering and balancing all these factors, the Court determines to reduce Defendant Hughes's sentence with respect to Counts 1, 2 and 3 to 85 months imprisonment. All other terms of the original sentence, including the 60-month consecutive sentence with respect to Count 4 remain unchanged.

The docket reflects that Defendant Hughes was arrested on May 28, 2008. (ECF No. 4). He was released on bond, and then remanded into Marshal custody following his July 21, 2008 plea. Defendant Hughes appears to have been in continuous marshal and BOP custody since then,

a period of approximately 134 months, and according to the Bureau of Prisons' website Defendant is currently scheduled to be released on August 6, 2021. Considering the availability of good time credits, it is possible the sentence the Court is entering today will put Defendant Hughes close to a release date. Accordingly, the Court rules that the reduced sentence will be for no less than time served. *See United States v. Laguerre*, No. 5:02-cr-30098-3, 2019 WL 861417, at *3-*4 (W.D. Va. Feb. 22, 2019) (declining, under First Step Act, to reduce a sentence to less than time served because the need to protect the public and for deterrence directs that a defendant not be allowed to "bank time."). Moreover, the Court will further Order that this decision take effect ten days from the date of this Opinion in order to permit the Bureau of Prisons to complete certain administrative requirements, if necessary.

## CONCLUSION

Defendant Hughes's pro se motion for modification or reduction of sentence under the First Step Act (ECF No. 82) is granted to the extent detailed in this Opinion, and his term of imprisonment reduced to a total term of one hundred forty-five (145) months imprisonment but no less than time served. This term consists of eighty-five (85) months on Counts 1, 2, and 3, such terms to run concurrently, and sixty (60) months on Count 4, to be served consecutively to Counts 1, 2, and 3. All other terms of the original sentence, including the five years of supervised release, remain unchanged.

A separate Order consistent with this Opinion shall issue.

Dated:  September 24, 2019          /s/ Robert J. Jonker
                                                                              ROBERT J. JONKER
                                                                              CHIEF UNITED STATES DISTRICT JUDGE